# In the United States Court of Federal Claims

Nos. 14-1248C & 16-589C (not consolidated)

(Filed: February 14, 2017)

```
*********************************
                                  )
ENTERGY NUCLEAR                   )   Claims by buyer and seller of nuclear
GENERATION COMPANY,               )   power plant for damages attributable to
                                  )   breach of a contract to dispose of spent
            Plaintiff,            )   nuclear fuel; unripe nature of seller's
                                  )   claim; dismissal of seller's claim without
      v.                          )   prejudice, subject to renewal when claim
                                  )   ripens
UNITED STATES,                    )
                                  )
            Defendant.            )
_____)
                                  )
BOSTON EDISON COMPANY,            )
                                  )
            Plaintiff,            )
                                  )
      v.                          )
                                  )
UNITED STATES,                    )
                                  )
            Defendant.            )
                                  )
*********************************
```

   L. Jager Smith, Jr., Jager Smith, LLC, Jackson, Mississippi, for plaintiff Entergy Nuclear Generation Company. With him on the briefs and at the hearing were Clare Cavaliero Pincoski, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C., and Sam O. Morris, Entergy Services, Inc., Jackson, Mississippi. Also with him on the briefs were Alex D. Tomaszczuk and Jay E. Silberg, Pillsbury Winthrop Shaw Pittman LLP, Washington, D.C.

   Richard J. Conway, Blank Rome LLP, Washington, D.C., for plaintiff Boston Edison Company. With him on the briefs and at the hearing was Adam Proujansky, Blank Rome LLP, Washington, D.C. Also with him on the briefs were Frederick M. Lowther, Blank Rome LLP, Washington, D.C., Neven Rabadjija, Deputy General Counsel, Eversource Energy, Boston, Massachusetts, and Nicholas W. Mattia, Jr., Lakewood Ranch, Florida.

   Heidi L. Osterhout and Sarah Choi, Trial Attorneys, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With them on the briefs and at the hearing were Alexis J. Echols and Kristin B. McGrory, Trial Attorneys,

Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.  Also with them on the briefs were Chad A. Readler, Acting Assistant Attorney General, Civil Division, Benjamin C. Mizer, former Principal Deputy Assistant Attorney General, Civil Division, and Robert E. Kirschman, Jr., Director, Bryant G. Snee, Deputy Director, Scott D. Austin, Assistant Director, Allison Kidd-Miller, Assistant Director, and Adam E. Lyons, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C.  Also with them at the hearing was Lisa Donahue, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington D.C.  Of counsel was Jane K. Taylor, Office of General Counsel, United States Department of Energy, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Entergy Nuclear Generation Company ("Entergy") and Boston Edison Company ("Boston Edison") bring separate suits against the United States ("the government"), acting by and through the United States Department of Energy ("DOE"), for claims related to the storage of spent nuclear fuel ("SNF") at the Pilgrim Nuclear Power Station ("Pilgrim").  Boston Edison entered into a "Standard Contract" with DOE in 1983 while it owned the Pilgrim plant, and then subsequently sold the plant to Entergy in 1999.  Both Boston Edison and Entergy previously sued the government for breach of contract on the ground that DOE failed its statutory and contractual obligations to dispose of the SNF at Pilgrim, and the issues related to this breach of contract have been extensively litigated in this court by both the seller and buyer of the plant.  *See Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005) ("*Boston Edison I*"); *Boston Edison Co. v. United States*, 67 Fed. Cl. 63 (2005) ("*Boston Edison II*"); *Boston Edison Co. v. United States*, 80 Fed. Cl. 468 (2008) ("*Boston Edison III*"), *appeal dismissed and remanded*, *Boston Edison Co. v. United States*, 299 Fed. Appx. 956 (Fed. Cir. 2008) ("*Boston Edison IV*"); *Boston Edison Co. v. United States*, 93 Fed. Cl. 105 (2010) ("*Boston Edison V*"), *aff'd in part, rev'd in part, and remanded*, *Boston Edison Co. v. United States*, 658 F.3d 1361 (Fed. Cir. 2011) ("*Boston Edison VI*"); *Boston Edison Co. v. United States*, 106 Fed. Cl. 330 (2012) ("*Boston Edison VII*"), *appeal dismissed*, No. 13-5053 (Fed. Cir. Mar. 15, 2013).  The issues were last litigated in 2012, when the court upheld a final judgment for Entergy for damages through December 31, 2008 due to DOE's partial breach of contract, and also dismissed Boston Edison's complaint "without prejudice and with leave to refile when costs to mitigate DOE's breach of the Standard Contract are incurred on decommissioning Pilgrim."  *Boston Edison VII*, 106 Fed. Cl. at 343.

Entergy filed its present suit to recover damages that it incurred between December 31, 2008 and June 30, 2015 due to DOE's ongoing partial breach of contract.  Entergy Am. Compl. ¶ 3.[1]  Subsequently, on May 18, 2016, Boston Edison filed suit to recover damages for DOE's breach of contract, alleging that its damages are now "ascertainable" because the decommissioning of Pilgrim has allegedly begun.  Boston Edison Compl. ¶¶ 1, 4, 19.  Boston

---

[1]Entergy submitted its complaint on December 30, 2014, and thereafter filed an amended complaint on September 29, 2015.

Edison's suit was prompted in substantial part by two material facts. First, in May 2012, the Nuclear Regulatory Commission ("NRC") approved a 20-year extension of Pilgrim's operating license, allowing the plant to operate through 2032. Boston Edison Compl. ¶ 16. Second, notwithstanding this extension, by letter dated November 10, 2015, Entergy notified the NRC that "it ha[d] decided to permanently cease power operations at the Pilgrim Nuclear Power Station no later than June 1, 2019." Boston Edison Compl. ¶ 17 (quoting Letter from John Ventosa, Chief Operating Officer – North, Entergy Nuclear Operations, Inc. to NRC (Nov. 10, 2015), available at https://www.nrc.gov/docs/ML1532/ML15328A053.pdf).

Pending before the court is the government's motion to dismiss Boston Edison's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") and for failure to state a claim pursuant to RCFC 12(b)(6), or, alternatively, to join Boston Edison's claims with Entergy's claims pursuant to RCFC 19(a). Def.'s Mot. to Dismiss, and, in the Alternative, Mot. for Joinder of Entergy Nuclear Generation Co. ("Def.'s Mot. to Dismiss"), No. 16-589C, ECF No. 9. The government also moved to stay discovery and amend the case schedule in *Entergy* until the pending motion in *Boston Edison* is resolved. Def.'s Mot. to Stay Disc. and Amend Case Schedule ("Def.'s Mot. to Stay") at 1, No. 14-1248C, ECF No. 20. On January 17, 2017, the court temporarily suspended the discovery schedule in *Entergy*, pending resolution of the extant motion in *Boston Edison*. Order of Jan. 17, 2017, No. 14-1248C, ECF No. 35. Now, for the reasons stated, the court dismisses Boston Edison's complaint without prejudice and denies the government's motion to stay discovery in Entergy as moot.[2]

**BACKGROUND**

*A. Litigation History*

On June 17, 1983, Boston Edison and DOE entered into a "Standard Contract" relating to SNF at Pilgrim. *Boston Edison III*, 80 Fed. Cl. at 470-71. The Standard Contract and the Nuclear Waste Policy Act of 1982, Pub. L. No. 97-425, § 302, 96 Stat. 2201 (1983) (codified at 42 U.S.C. § 10222), which was implemented in part by the Standard Contract, made DOE responsible for collecting and disposing of Pilgrim's SNF no later than January 31, 1998. *Boston Edison VII*, 106 Fed. Cl. at 333. The Standard Contract also required Boston Edison to pay fees to the government, and Boston Edison satisfied that obligation. *Boston Edison VI*, 658 F.3d at 1364. The government, however, has yet to fulfill its SNF obligations and is not expected to do so in the foreseeable future. *See Boston Edison VII*, 106 Fed. Cl. at 333; Boston Edison Compl. ¶ 18; Entergy Am. Compl. ¶ 21.[3]

---

[2]Because the pending motion in *Boston Edison* has been resolved, discovery shall resume in *Entergy*. The parties shall propose a new discovery schedule within 7 days of the filing of this opinion.

[3]Notably, "[t]he government has breached similar contractual undertakings nationwide, leading to numerous breach of contract actions." *Boston Edison VI*, 658 F.3d at 1364.

3

In 1997, Massachusetts enacted legislation that required utilities, including Boston Edison, "to sell their electricity generation assets and operations or to functionally separate their generation operations from their transmission and distribution operations." *Boston Edison VI*, 658 F.3d at 1364 (citing Mass. Gen. Laws ch. 164, § 1A (1997)). Boston Edison responded by selling the Pilgrim plant, fuel, inventory, and land through a competitive auction to Entergy for $80 million. *Boston Edison VII*, 106 Fed. Cl. at 333. Entergy also accepted the responsibility of decommissioning Pilgrim and attendant storing of SNF in exchange for a decommissioning fund of $428 million. *Id.*[4] The final agreement provided Entergy with the rights to all claims post-dating the sale, but a clause in the agreement gave Boston Edison the rights to any claims "related or pertaining to the Department of Energy's defaults under the DOE Standard Contract accrued as of the Closing Date, whether relating to periods prior to or following the Closing Date." *Boston Edison VI*, 658 F.3d at 1365.

On July 12, 1999, one day before the closing date of the Pilgrim sale to Entergy, Boston Edison filed its first suit in this court regarding SNF storage at Pilgrim. *Boston Edison I*, 64 Fed. Cl. at 173. Boston Edison sought damages for the government's partial breach of the Standard Contract through a "diminution-in-value claim," alleging that it "realized significantly less value in the sale" to Entergy because the value of Pilgrim had been "significantly diminished" by DOE's breach. *Boston Edison II*, 67 Fed. Cl. at 65 (internal quotation marks omitted). In 2003, while Boston Edison's claim for partial breach of contract remained pending, Entergy filed its first suit to recover damages for the government's partial breach of the Standard Contract, beginning on the date of the Pilgrim sale. *Boston Edison VII*, 106 Fed. Cl. at 334. In 2005, this court partially consolidated Boston Edison's and Entergy's claims "for the limited purpose of addressing issues concerning (1) contract formation, (2) contract implementation through the date of sale of the Pilgrim Nuclear Power Station, and (3) Boston Edison Company's diminution-in-value claim and the government's attendant offset claim against Entergy." *Boston Edison II*, 67 Fed. Cl. at 67.

This court held a trial and entered judgment for Boston Edison in the amount of $40,030,000, which represented the diminution of Pilgrim's value due to DOE's failure to perform under the Standard Contract. *See Boston Edison III*, 80 Fed. Cl. at 485-96. The amount was "the best evidence of what Entergy bargained for in the decommissioning fund to account for SNF storage costs stemming from DOE's breach of the Standard Contract." *Id.* at 491. The court then held an additional trial and entered judgment for Entergy for approximately $4.2 million. *See generally Boston Edison V*, 93 Fed. Cl. 105. That judgment represented mitigation damages Entergy had incurred as a result of DOE's "partial breach of the Standard Contract through December 31, 2008." *Id.* at 139. The award consisted of approximately $2.9 million in costs associated with the purchase and installation of spent fuel racks, and approximately $1.3 million in NRC fees. *Id.* In making the award, the court rejected the government's claim for an offset or recoupment of Entergy's damages against Boston Edison's damages award, but also

---

[4]"The initial decommissioning and storage payment was $471 million, but a portion of the payment was ultimately returned to Boston Edison after the Internal Revenue Service determined that the transfer of the decommissioning fund was entitled to favorable tax treatment." *Boston Edison VI*, 658 F.3d at 1364 n.2.

4

noted that "the government will have a valid claim for recoupment when the Pilgrim facility ceases operation." *Id.*

On appeal, the Federal Circuit affirmed, reversed, and remanded aspects of the court's two judgments. *See generally Boston Edison VI*, 658 F.3d 1361. The court of appeals reversed Boston Edison's judgment regarding its diminution-in-value claim, reasoning that "'prospective damages for anticipated future nonperformance' are not recoverable in a partial breach case." *Id.* at 1367 (quoting *Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1376 (Fed. Cir. 2005)). Although "Boston Edison expended money at the time of sale to add to the decommissioning trust fund," the damages for DOE's pre-transfer breach could not yet be determined because "the actual costs of SNF disposal" would not be known until "the time of decommissioning." *Boston Edison VII*, 106 Fed. Cl. at 334 (citing *Boston Edison VI*, 658 F.3d at 1367). But, significantly, the Federal Circuit stated:

> We do not decide the respective rights of Boston Edison and Entergy relating to any partial or total breach of contract by DOE that postdates the decommissioning of the Pilgrim facility. The trial court did not address that aspect of the parties' rights and obligations under the contract between them, and we decline to do so in the first instance.

*Boston Edison VI*, 658 F.3d at 1367 n.4. The Federal Circuit also affirmed the judgment of approximately $3 million in storage costs awarded to Entergy, *id.* at 1363, but remanded the roughly $1 million award to Entergy for NRC fees, *id.* at 1370.

Subsequently, Entergy and the government entered a stipulation for final judgment, resolving the issue related to NRC fees and requesting "an entry of final judgment for Entergy in the uncontested amount of $4,141,621[.00] with an award of costs in favor of Entergy in the uncontested amount of $27,039.72." *Boston Edison VII*, 106 Fed. Cl. at 335 (internal quotation marks and citation omitted). The court severed the partial consolidation of Entergy's and Boston Edison's claims and entered final judgment for Entergy in accord with the terms of the stipulation. *Id.* Two months later, however, the government filed a motion for reconsideration of that judgment on the grounds that (1) the court erred when it severed the partial consolidation because the court should not have entered final judgment for Entergy until it resolved Boston Edison's claims, or, alternatively, (2) the court erred by failing to dismiss Boston Edison's claims with prejudice at the time of the severance. *Id.* The court denied the government's motion, upholding the final judgment for Entergy and adhering to the dismissal of Boston Edison's claims on "prudential grounds," explaining that the dismissal was "without prejudice and with leave to refile when costs to mitigate DOE's breach of the Standard Contract are incurred on decommissioning Pilgrim." *Id.* at 333, 343. The court held that the Federal Circuit's decision not to address the parties' rights post-dating the decommissioning of the Pilgrim facility, *see Boston Edison VI*, 658 F.3d at 1367 n.4, was an implicit remand to this court to determine outstanding issues that were not addressed by the court of appeals, "including Boston Edison's nascent claim for decommissioning costs," *Boston Edison VII*, 106 Fed. Cl. at 341-42. The lack of a viable *present* claim by Boston Edison for costs attributable to DOE's breach did not mean that Boston Edison would never have such a claim. Rather, "presentation of Boston Edison's claim 'must await a more concrete setting.'" *Id.* at 342 (quoting *Molins PLC v. Quigg*,

837 F.2d 1064, 1068 (Fed. Cir. 1988)).  In that respect, the court stated that Boston Edison's "damages from [DOE's breach of contract] will not be ascertainable until the decommissioning of the Pilgrim plant," *id.*, and it "expressly reserve[d] Boston Edison's right to bring a second action when and if breach-mitigating costs are incurred from the decommissioning fund," *id.* at 343 (citing *Restatement (Second) of Judgments* § 26(1)(b), (e)).

### B.  Present Claims

Entergy filed its current suit to recover damages incurred between January 1, 2009 and June 30, 2015 as a result of DOE's "continuing partial material breach of its unconditional obligation to begin disposing of SNF generated by Pilgrim."  Entergy Am. Compl. ¶ 3.  Entergy alleges that the government partially breached the Standard Contract (Count I), breached the implied covenant of good faith and fair dealing (Count II), and contravened the Takings Clause of the Fifth Amendment (Count III).  Entergy Am. Compl. ¶¶ 24-36.  As the current owner of Pilgrim, Entergy alleges that the government's actions have caused and will continue to cause Entergy to incur substantial costs in storing SNF at Pilgrim.  Entergy Am. Compl. ¶¶ 4, 23.

Boston Edison's suit to recover "at least $40,030,000" for DOE's "material breach of its unconditional obligation to dispose of" SNF at Pilgrim, Boston Edison Compl. ¶ 1, is premised on its allegation that its damages are "ascertainable" because the decommissioning of Pilgrim has begun.  Boston Edison Compl. ¶¶ 4, 19.  The legal theories it invokes are breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count II).  Boston Edison Compl. ¶¶ 21-33.  Boston Edison states that because of the alleged decommissioning, DOE is now in complete breach of its obligations to Boston Edison.  Boston Edison Compl. ¶¶ 4, 20.  It also "reserves all rights to recover presently unascertainable damages that may be caused by DOE's continuing partial breach of the Standard Contract."  Boston Edison Compl. ¶ 28.

On August 17, 2016, the government moved to dismiss Boston Edison's claims for lack of jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to RCFC 12(b)(6), or, alternatively, to join Boston Edison's claims with Entergy's claims pursuant to RCFC 19(a).  Def.'s Mot. to Dismiss.  Regarding subject matter jurisdiction, the government alternatively argues that Boston Edison (1) lacks standing because Boston Edison assigned its rights under the Standard Contract to Entergy for all claims post-dating the 1999 sale, (2) is barred by the six-year statute of limitations that purportedly expired in 2005, or (3) brings claims that are not ripe because Boston Edison has not yet incurred damages.  *Id.* at 14-20.  Regarding failure to state a claim, the government asserts that Boston Edison's complaint should be dismissed because the claims (1) are for diminished value of the Pilgrim plant, which is a theory that the Federal Circuit rejected, and (2) are for a total, rather than partial, breach of contract, which conflicts with Federal Circuit precedent and is inconsistent with "DOE's ongoing breach of the Standard Contract."  *Id.* at 20-28.

Shortly thereafter, Entergy stated that Pilgrim "remains fully operational" and "is not being decommissioned," which facts it contended supported the dismissal of Boston Edison's claims as premature, and it opposed joinder of Boston Edison's and Entergy's claims.  *See* Amicus Curiae Br. of Entergy Nuclear Generation Co. Regarding Def.'s Mot. to Dismiss, and in

the Alternative, Mot. for Joinder of Entergy Nuclear Generation Co. ("Entergy's Br.") at 2, No. 16-589C, ECF No. 11-1. Boston Edison responded that its claims are ripe because decommissioning of the Pilgrim plant had begun and that joinder is appropriate. *See* Boston Edison Co.'s Resp. to the Amicus Curiae Br. of Entergy Nuclear Generation Co. Regarding Def.'s Mot. to Dismiss, and in the Alternative, Mot. for Joinder of Entergy Nuclear Generation Co. ("Boston Edison's Resp. to Entergy's Br.") at 2, No. 16-589C, ECF No. 13-1. The government's pending motions have been briefed and were addressed at an evidentiary hearing on November 10, 2016, which included testimony regarding the current status of the Pilgrim plant. At the close of the evidentiary hearing, the court requested that Entergy "provide by way of affidavit or declaration, the status of the decommissioning fund on a current basis and whether there have ever been any withdrawals from the decommissioning fund." Hr'g Tr. 84:1-4 (Nov. 10, 2016).[5] Thereafter, Entergy submitted an affidavit by Peter L. Swigart, Director, Financial Operations, Entergy Service, Inc. disclosing the amount in the Pilgrim Trust Fund as of October 31, 2016, and stating that:

> No funds have been withdrawn from the Pilgrim Decommissioning Trust Fund for the costs of any decommissioning activities, any decommissioning planning activities, any spent fuel management costs, or any spent fuel management planning activities.

Entergy's Notice Regarding Req. Aff., No. 14-1248C, ECF No. 32; Aff. of Peter L. Swigart (Nov. 30, 2016) ("Swigart Aff.") ¶¶ 1, 6, 8, No. 14-1248C, ECF No. 32-1. The United States and Boston Edison then responded to the Swigart Affidavit. *See* Def.'s Resp. to Dec. 8, 2016 Entergy Aff. ("Def's Resp. to Swigart Aff."), No. 16-589C, ECF No. 23; Boston Edison Co.'s Resp. to the Entergy Aff. ("Boston Edison's Resp. to Swigart Aff."), No. 16-589C, ECF. No. 24.

**STANDARDS FOR DECISION**

The Tucker Act provides this court with jurisdiction "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This jurisdictional requirement is not at issue; the plaintiffs' claims for breach of contract fall within the jurisdiction of the Tucker Act. *See Boston Edison I*, 64 Fed. Cl. at 174-79 (addressing the court's jurisdiction and finding that "[t]he Tucker Act grants this court subject matter jurisdiction over claims arising under the Standard Contract").

Under RCFC 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To avoid dismissal, the facts alleged must sufficiently "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Kam-Almaz v. United States*, 682 F.3d 1364, 1367-68 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at

---

[5]The date will be omitted from further citations to the transcript of the evidentiary hearing held on November 10, 2016.

555). In evaluating a motion to dismiss pursuant to RCFC 12(b)(6), the court must accept all factual allegations in the complaint as true and draw "all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001) (internal citations omitted). Nonetheless, the court is not required to accept legal conclusions, even if placed within factual allegations. *Kam-Almaz*, 682 F.3d at 1367-68 (citing *Twombly*, 550 U.S. at 555).

## ANALYSIS

Given the Federal Circuit's disposition of the earlier suits by the parties and this court's subsequent determination that Boston Edison's damages will not be ascertainable until the decommissioning of Pilgrim, *see Boston Edison VI*, 658 F.3d at 1366-72; *Boston Edison VII*, 106 Fed. Cl. at 341-43, the salient issue before the court is whether the decommissioning activities at the Pilgrim plant have begun.[6] The government would define the underlying issue differently, instead contending that "the status of whether the Pilgrim plant is in operation versus decommissioning does not resolve the viability of Boston Edison's claim" because "the spent fuel storage costs planned for 2012 and onward were still incurred by Entergy, irrespective of whether the plant has begun decommissioning." Def.'s Resp. to Swigart Aff. at 5-7. Additionally, the government asserts that the financial source of Entergy's spending for SNF storage, whether or not from the decommissioning fund, is irrelevant because "[t]he viability of Boston Edison's claim depends on whether spent fuel storage costs have been incurred by Entergy, not which dollar Entergy used to pay for those spent fuel storage costs." *Id.* at 2-3.

---

[6]In its pending motion, the government asserts that this court lacks jurisdiction on the grounds that Boston Edison does not have standing because it does not possess any rights under the contract after the 1999 sale, or, alternatively, that the statute of limitations expired in 2005. Def.'s Mot. to Dismiss at 14-19. The court has already comprehensively addressed and rejected these arguments. *See, e.g.*, *Boston Edison I*, 64 Fed. Cl. 179-86 (rejecting the government's contention that Boston Edison lacked standing); *Boston Edison VII*, 106 Fed. Cl. at 343 ("[T]he statute of limitations will not begin to run on Boston Edison's claim until the time the corresponding damages are actually incurred."). Additionally, the government contends that Boston Edison has failed to state a claim because the complaint is based on a diminution-in-value theory that the court of appeals already declined to accept, *see* Def.'s Mot. to Dismiss at 20-26, but the court has considered and rejected this argument as well, ruling that the court of appeals had recognized that Boston Edison would have a viable claim for damages when decommissioning commenced, *see Boston Edison VII*, 106 Fed. Cl. at 339-43. The government has neither acknowledged these prior decisions nor requested that the court reconsider them.

Additionally, the government asserts that Boston Edison has failed to state a claim because Boston Edison brought a total, rather than partial, breach of contract claim, *see* Def.'s Mot. to Dismiss at 26-27, but as Boston Edison notes, the complaint alternatively presents both total and partial breach of contract theories, *see* Boston Edison Co.'s Resp. to Def's Mot. to Dismiss, and, in the Alternative, Mot. for Joinder of Entergy Nuclear Generation Co. ("Boston Edison's Resp. to Def.'s Mot. to Dismiss") at 20-22, No. 16-589C, ECF No. 10. The court accordingly rejects the government's alternative ground for dismissal.

Boston Edison proffers similar arguments on these points, albeit proposing a different result, *i.e.*, one in Boston Edison's favor. *See* Boston Edison's Resp. to Swigart Aff. at 1-2.

The government's and Boston Edison's arguments in this regard are not consistent with the prior decisions of the Federal Circuit and this court. In reversing the judgment in favor of Boston Edison on its earlier claim, the Federal Circuit explicitly stated that it was not addressing the "respective rights of Boston Edison and Entergy relating to any partial or total breach of contract by DOE that *postdates the decommissioning of the Pilgrim facility*." *Boston Edison VI*, 658 F.3d at 1367 n.4 (emphasis added). In light of this disposition, this court subsequently held that Boston Edison's damages "will not be ascertainable until the decommissioning of the Pilgrim plant," *Boston Edison VII*, 106 Fed. Cl. at 342, and reserved Boston Edison's right to bring another action when "costs are incurred *from the decommissioning fund*," *id.* at 343 (emphasis added). Contrary to the government's position, the decommissioning of Pilgrim is critical to Boston Edison's claims because Entergy will expend funds for the storage of SNF *after* decommissioning begins, resulting in ascertainable damages for Boston Edison. The fact that Entergy is currently incurring costs for SNF storage will not be helpful to Boston Edison's claims if such SNF-related expenditures have not occurred as a consequence of the commencement of the decommissioning process or originated from the decommissioning fund. The court therefore must determine whether the decommissioning of Pilgrim has commenced.

On May 29, 2012, the NRC issued "Renewed Facility Operating License No. DPR-35 for the Pilgrim Nuclear Power Station." Entergy Ex. 1 (Letter from Nathaniel Ferrer, Project Manager, Division of License Renewal, NRC to Michael A. Balduzzi, Senior Vice President & Chief Operating Officer, Regional Operations, NE, Entergy Nuclear Operations, Inc. (May 29, 2012) (available at https://www.nrc.gov/docs/ML0910/ML091040423.pdf)) at 1.[7] The renewed license expires on June 8, 2032. *Id.* On November 10, 2015, Entergy notified the NRC, in accordance with 10 C.F.R. § 50.82, "that it has decided to permanently cease power operations at the Pilgrim Nuclear Power Station no later than June 1, 2019." Entergy Ex. 2 (Letter from John Ventosa, Chief Operating Officer – North, Entergy Nuclear Operations, Inc. to NRC (Nov. 10, 2015) (available at https://www.nrc.gov/docs/ML1532/ML15328A053.pdf)).[8] In that letter, Entergy stated that the "[t]he exact timing of the shutdown is expected to be decided in the first half of 2016." *Id.* In this respect, John Dent, the site vice president of the Pilgrim plant and an employee of Entergy Nuclear Operations, Inc., testified at the evidentiary hearing held on November 10, 2016 that Entergy has since decided to cease power operations of the Pilgrim plant on May 31, 2019, and that it has informed the NRC of such plan verbally. Hr'g Tr. 38:2-8, 48:21 to 49:15 (Test. of John Dent).

---

[7]The Entergy exhibits refer to exhibits admitted into evidence at the hearing held on November 10, 2016.

[8]"When a licensee has determined to permanently cease operations the licensee shall, within 30 days, submit a written certification to the NRC, consistent with the requirements of [Paragraph] 50.4(b)(8)." 10 C.F.R. § 50.82(a)(1)(i). The written certification "must state the date on which operations have ceased or will cease, and must be submitted to the NRC's Document Control Desk." *Id.* § 50.4(b)(8).

Additionally, Mr. Dent testified that the Pilgrim plant is currently fully operational and it has not undertaken any activities related to decommissioning. Hr'g Tr. 43:1-24 (Dent). Pilgrim's next planned refueling outage is in the spring of this year, 2017, which will provide sufficient fuel for Pilgrim to operate until May 31, 2019. Hr'g Tr. 51:3-13 (Dent). Pilgrim has not reduced its budget or staff since Entergy decided that it intends to cease operations in 2019. Hr'g Tr. 51:14-20 (Dent). Entergy's most recent negotiations with the unions representing the Pilgrim workforce resulted in new five-year contracts that expire in 2021, accounting for two years of work that will be required after the shutdown of the plant. Hr'g Tr. 51:21 to 53:8 (Dent). Through June 1, 2019, Entergy is also committed to placing its power output into the New England Power Pool, which comprises six New England states and helps to ensure reliability in the regional power market. Hr'g Tr. 53:9 to 54:5 (Dent).

On December 8, 2016, Entergy filed the affidavit of Peter L. Swigart, who has "financial oversight of decommissioning operations at Entergy Corporation nuclear facilities." Swigart Aff. ¶ 1. Pilgrim's decommissioning fund, which Entergy received from Boston Edison in the 1999 sale of the Pilgrim plant, *see Boston Edison VII*, 106 Fed. Cl. at 333, continues to be maintained by Entergy separate from the company's other assets, Swigart Aff. ¶ 2. The fund is held by the fund's trustee, the Bank of New York Mellon. *Id.* ¶ 5. As noted previously, Mr. Swigart explained that "[n]o funds have been withdrawn from the Pilgrim Decommissioning Trust Fund for the costs of any decommissioning activities." *Id.* ¶ 8; *see also* Hr'g Tr. 66:8-11 (Dent) (testifying that Pilgrim has not withdrawn any decommissioning funds for the planning of SNF management after the plant ceases operation).[9] Pilgrim has constructed independent spent fuel storage installations to store SNF at the Pilgrim plant in spent fuel storage casks, but it has not used any part of the decommissioning fund for that storage. Hr'g Tr. 56:1-25 (Dent).[10]

Entergy's use of the decommissioning fund at Pilgrim is subject to the limitations provided in 10 C.F.R. § 50.82(a)(8). Under this regulation, "decommissioning funds may not be used for non-decommissioning related expenses, such as SNF storage." *Boston Edison V*, 93 Fed. Cl. at 136 (citing 10 C.F.R. § 50.82(a)(8)(i)). The term "decommission" is defined as follows in 10 C.F.R. § 50.2:

> Decommission means to remove a facility or site safely from service and reduce residual radioactivity to a level that permits–

---

[9] Entergy has only withdrawn money from the fund for payment of taxes on the fund and administrative expenses. Swigart Aff. ¶ 7.

[10] The government focuses on the costs Entergy has already incurred to store SNF at Pilgrim, asserting that these actions will benefit Entergy when decommissioning begins. *See* Def.'s Resp. to Swigart Aff. at 9-11. The government's argument is beside the point at hand. Entergy's current SNF-related activity has the purpose of benefitting current operations, and the Pilgrim plant is still fully operational. Therefore, the SNF storage at Pilgrim presently only benefits the operation of Pilgrim; the costs related to SNF when decommissioning begins are not yet known.

> (1) Release of the property for unrestricted use and termination of the license; or
>
> (2) Release of the property under restricted conditions and termination of the license.

Subparagraph 50.82(a)(8)(ii) further provides that three percent of the decommissioning fund may be initially used for decommissioning planning.[11]  Regarding SNF-related planning, the NRC recently stated:

> After consultation with the Office of General Counsel, the staff's position is that the initial three percent withdrawal from the decommissioning trust fund allowed for decommissioning planning is limited to paper studies related to decommissioning activities as defined in 10 C.F.R. [§] 50.2 and cannot be used for spent fuel management planning.

NRC Inspection Report No. 05000271/2016001 at 3 (May 4, 2016) (available at https://www.nrc.gov/docs/ML1612/ML16125A036.pdf).[12]

      Given the testimony of Mr. Dent, the affidavit of Mr. Swigart, and the relevant regulations, Entergy has not yet begun the decommissioning of the Pilgrim plant.  While Entergy certified that it intends to cease operations at Pilgrim in 2019, the plant remains fully operational and has not undertaken any decommissioning activities.  Additionally, no expenditures for the storage of SNF at Pilgrim have been made from the decommissioning fund.  Although licensees are generally permitted to use three percent of the decommissioning fund for decommission

---

[11] Subparagraph 50.82(a)(8)(ii) also states that an additional 20 percent of the fund may be used when a licensee submits the certifications set forth in Paragraph 50.82(a)(1), but only 90 days after the NRC receives the post-shutdown decommissioning activities report ("PSDAR").  The PSDAR, which must contain "a description of the planned decommissioning activities along with a schedule for their accomplishment," among other requirements, can be submitted "[p]rior to or within 2 years following permanent cessation of operations."  10 C.F.R. § 50.82(a)(4)(i).  The NRC is required to "make the PSDAR available for public comment."  *Id.* § 50.82(a)(4)(ii).

      The notification of planned closure of Pilgrim submitted by Mr. Ventosa on November 10, 2015 under penalty of perjury, satisfied the certification requirement of Paragraph 50.82(a)(1).

[12] Similarly, the relevant Treasury Regulation regarding decommissioning specifies that "[t]he term nuclear decommissioning costs or decommissioning costs . . . does not include otherwise deductible expenses to be incurred in connection with the disposal of spent nuclear fuel under the Nuclear Waste Policy Act of 1982."  26 C.F.R. § 1.468A-1(b)(6).  Very recently, the Treasury Department has issued a proposed rule that would include SNF storage costs within the definition of nuclear decommissioning costs, but that rule is not final.  *See* Nuclear Decommissioning Funds, 81 Fed. Reg. 95929, 95930 (Dec. 29, 2016).

11

planning, Entergy cannot use that amount to plan the SNF disposal at Pilgrim because the general rule does not extend to spent fuel management.

Boston Edison responds by relying on a final report issued by the NRC in 2000, which stated:

> The regulations are written so that when a licensee announces its decision to permanently cease power operations at the nuclear power plant . . . the decommissioning process is automatically initiated, and specific decisions regarding the decommissioning process must be made within 2 years.

Boston Edison's Resp. to Entergy Br. at 2 & Ex. A (citing Staff Responses to Frequently Asked Questions Concerning Decommissioning of Nuclear Power Plants (Final Report), NUREG-1628, § 1.4 (June 2000) (available at https://www.nrc.gov/docs/ML0037/ML003726190.pdf)). In the context of the Pilgrim plant, however, Boston Edison's reliance on this report is unavailing. The NRC's report in 2000 only specifies when the decommissioning *process* is initiated, not when the decommissioning of the plant itself begins. The report does not require a licensee to make decommissioning decisions immediately, engage in decommissioning activities, or withdraw money from a decommissioning fund. Entergy's certification that it intends to cease operation of Pilgrim in 2019 provides timely notice but no more. The statements of Mr. Dent and Mr. Swigart indicate that Entergy has not yet undertaken any decommissioning planning or activities, specifically in the context of SNF. This decision is consistent with the pertinent regulations. As Mr. Swigart explained:

> [N]o funds for any spent fuel management costs, or any spent fuel management planning activities, can be withdrawn from the Pilgrim Decommissioning Trust Fund without the NRC's issuance of an exemption from its regulations restricting decommissioning trust fund withdrawals to expenses for legitimate decommissioning activities.

Swigart Aff. ¶ 9 (citing 10 C.F.R. § 50.82(a)(8) and NRC Inspection Report No. 05000271/2016001, discussed *supra*). And, Entergy has not sought an exemption from the requirements set forth in the NRC regulations. *See* Swigart Aff. ¶ 9; Hr'g Tr. 68:14-18 (Dent).

Therefore, in light of the prior decisions regarding Boston Edison's claims being dependent upon decommissioning at Pilgrim, Boston Edison's damages are not yet ascertainable.[13]

---

[13] According to the government, the court's decision will result in Entergy controlling the disposition of Boston Edison's claims, which is "problematic because the two plaintiffs have conflicting interests." Def.'s Resp. to Entergy Aff. at 5. This postulate by the government is not supportive of the ultimate result it seeks. When Entergy begins the decommissioning of Pilgrim, it will continue to incur expenses for the storage of SNF. At that point, Boston Edison's claims then will become viable because damages for post-operation storage will be incurred.

## CONCLUSION

For the reasons stated, the government's motion to dismiss Boston Edison's complaint is GRANTED and the government's motion to stay discovery in *Entergy* is DENIED as moot.

Boston Edison's complaint in No. 16-589C is DISMISSED because its claim is not yet ripe. The complaint is dismissed without prejudice and with leave to refile when costs to mitigate DOE's breach of the Standard Contract are incurred on decommissioning activities at Pilgrim. In No. 16-589C, the clerk shall enter judgment in accord with this disposition.

No costs.

As noted *supra*, the parties in *Entergy* shall file a joint status report on or before February 22, 2017, proposing a schedule to complete discovery in that case.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge